IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ALLEN HUGHES,** | : | **CIVIL ACTION** |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LIBERTY MUTUAL PERSONAL** | : | |
| **INSURANCE COMPANY,** | : | |
| *Defendant.* | : | **NO. 23-cv-03934** |

**MEMORANDUM**

**KENNEY, J.**                                                                                                     **AUGUST 5, 2024**

On September 1, 2023, Plaintiff Allen Hughes filed a Complaint in the Court of Common Pleas of Philadelphia County against Defendant Liberty Mutual Personal Insurance Company ("Liberty Mutual"), alleging breach of contract (Count I) and statutory bad faith (Count II). ECF No. 1, Ex. A. On October 11, 2023, Liberty Mutual filed a Notice of Removal based on diversity jurisdiction. ECF No. 1. Because neither party filed a certification alleging that damages in the case could exceed $150,000, the case proceeded to arbitration. *See* ECF No. 5. After the arbitration, Hughes requested a trial de novo. ECF No. 34.

Presently before the Court is Defendant's Motion for Summary Judgment (ECF No. 32), Plaintiff's Response in Opposition (ECF No. 42), and Defendant's Response in Support (ECF No. 43). For the reasons set forth below, this Court will grant Defendant's Motion for Summary Judgment as to both Counts I and II.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case arises out of damage to a residential property owned by Hughes in Upper Darby, Pennsylvania. Hughes rented out the home but evicted his tenant on or around February 22, 2023.

ECF No. 32-14 at 3. Upon a visit to the premises on or around March 3, 2023, he found the previously evicted tenant still living there and reported the incident to the police. *Id.* Hughes also inspected the property and noticed damage in various parts of the home. ECF No. 32-15 at 4.

On March 8, 2023, he reported the damage to Liberty Mutual, his insurer. *See* ECF No. 32-13 at 1-2. Most importantly to this case, he claimed that black "grease" or some other black foreign substance was poured down one or more sink drains, causing damage to the plumbing and water backup. *See* ECF No. 42-3 at 2. He also noted cracked tiles, a broken water connection, and other damage. *Id.* Finally, he reported his belief that the damage was the result of vandalism. *Id.*

The property was insured by Hughes under Liberty Mutual Policy H3V-288-628293-40. *See* ECF No. 32-9. The policy covers all "physical loss to property," subject to specified exclusions. *Id.* at 14. Most relevant, the contract does not cover losses resulting from "wear and tear, marring, [or] deterioration." *Id.* at 6.

On May 18, 2023, Senior Forensic Engineer Paul Burtis, PE inspected the property on behalf of Liberty Mutual. While Burtis did note some damage, he did see not any evidence of "overflowing sinks" on the property.[1] ECF No. 32-15 at 5-6. He attributed the rest of the damage – stains, scruffs, abrasions, fallen ceiling plaster, cracked tiles, etc. – to repeated moisture exposures and rough usage, rather than a single event like vandalism. *Id.* Pursuant to the engineer's findings, Liberty Mutual found that the damage was due to "hard living" and "wear and tear," rather than "an intent to vandalize the property," and it denied Hughes's insurance claim accordingly. *See* ECF No. 32-13.

---

[1] According to email communications from Burtis to a Liberty Mutual representative, Burtis believed that overflowing sinks would have been the easiest way for the tenant to have caused intentional damage. ECF No 42-3 at 17.

After several months of discovery and one continuation of the arbitration hearing, *see* ECF No. 24, Liberty Mutual filed a motion on May 13, 2024 documenting the plaintiff's failure to produce essential documentation regarding the scope of the alleged losses and requesting that the Court limit Plaintiff's evidence to that produced as of that date, ECF No. 27. Hughes filed a parallel motion thereafter, requesting that the Court similarly limit Defendant's evidence. ECF No. 29. The Court granted both motions, foreclosing further discovery for the plaintiff as of May 10, 2024 and for the defendant as of May 17, 2024. *See* ECF Nos. 28, 31.

An arbitration hearing was held on May 21, 2024, ECF No. 33, and Hughes requested a trial *de novo* the following day, ECF No. 34. Later that week, Hughes filed a motion for reconsideration of the court's prior rulings on discovery limitations. ECF No. 36. Therein, he represented that he had "substantial difficulty in obtaining an estimate of damages" and requested a brief extension of the discovery period so that he could enter his late-arriving expert report into evidence. *Id.* at ¶ 6, 20. The Court denied Hughes's motion for reconsideration, noting that Plaintiff's expert report had been produced to Defendants at 3:33 p.m. the day before the arbitration was scheduled to begin, running afoul of the timelines set out for arbitration under the Eastern District of Pennsylvania's Local Rules. *See* ECF 40 at 3-4 n.1.

Hughes now alleges that Liberty Mutual's refusal to provide coverage for the damage constitutes both a breach of the insurance contract and a breach of an insurer's duty of good faith to its insured. *See generally* ECF No. 42.

## II. STANDARD OF REVIEW

Summary judgment is granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment carries the burden of identifying the "pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quotations omitted). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must "examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citations omitted). Crucially, however, a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions." *Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (citations omitted). Its opposition "must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000) (citation omitted). In other words, facts must be viewed in the light most favorable to the opposing party only if the dispute regarding those facts is "genuine." *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citation omitted).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations omitted). In such situations, a court must grant summary judgment in favor of the moving party.

### III.   DISCUSSION

Liberty Mutual argues that it is entitled to summary judgment because there is no genuine dispute of material fact as to (i) whether the losses were the result of vandalism (and therefore covered by the Policy); and (ii) whether Liberty Mutual acted in "bad faith" by denying the claim.

4

In response, Hughes provides only speculative allegations without any of the evidentiary support that would be needed for a reasonable jury to believe his version of the facts.

    a.   Breach of Contract

In order to establish breach of contract under Pennsylvania law, a plaintiff must establish "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (alteration in original) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (Pa. Super. Ct 1999)). "To prove damages, a plaintiff must give a factfinder evidence from which damages may be calculated to a 'reasonable certainty.'" *Id.* at 225-26 (citation omitted). Liberty Mutual argues that Hughes has failed to demonstrate breach, and, in the alternative, has failed to specify resultant damages with enough exactness to recover his losses. Liberty Mutual is correct on both fronts.

In his response to Liberty Mutual's motion, Hughes focuses on three areas of losses for which he argues that he has specified damages to a reasonable degree: 1) plumbing repairs totaling $675; 2) fourteen months of lost rental income due to the alleged uninhabitability of the property totaling $12,600; and 3) cleaning supplies totaling $1,583.48. ECF No. 42 at 19-20.

As to breach, Hughes has failed to put forward any affirmative evidence that the damage was caused by vandalism, and therefore should have resulted in coverage under the policy. The cause of the damage to the plumbing, Hughes asserts, was a "black substance" that was poured down the drain of an unspecified sink. *See* ECF No. 32-17 at 5. In addition to his own deposition testimony, he also cites plumbers' invoices, which suggest the existence of "grease" and a "clogged drain," though they do not describe any "black substance" in detail, nor indicate whether the clog arose from vandalism or wear and tear. *See* ECF No. 32-16. In contrast, Defendant's

5

expert found "sink clogs," ECF No. 42-3 at 17, but he did not document any foreign substance causing the plumbing issues, instead attributing the clogs to wear and tear. Hughes suggests that these discrepancies render summary judgment inappropriate. ECF No. 42 at 17.

The dispute regarding the existence and characteristics of any supposed "black substance" in the drains is irrelevant, however, given Hughes's lack of evidence about how it got there. Hughes has provided neither any direct evidence of vandalism, such as an eye-witness account, nor any expert opinion suggesting that vandalism is the cause of the damage. He claims in his deposition that three plumbers told him that the cause of the damage was a foreign substance poured down the drain, *see* ECF No. 32-17 at 5-6, but he fails to provide an affidavit or any other documentation from any of them attesting to that fact. He also failed to timely provide an engineer's report assessing the likely cause of the damage. *See* ECF Nos. 28, 40.[2] Finally, he concedes that he had not visited the property for ten months prior to his discovery of the damage, meaning that he could not possibly have observed the vandalism. ECF No. 32 ¶ 44. Accordingly, he has no admissible evidence to controvert Liberty Mutual's assessment. To put it plainly, there may have been black grease in the sink, but Hughes has provided no evidence that it appeared as a result of vandalism as opposed to wear and tear. Without any affirmative evidence of vandalism to counter Liberty Mutual's plentiful evidence of wear and tear, the mere fact that Liberty Mutual's

---

[2] Plaintiff produced his expert report to Defendant just hours before the arbitration was scheduled to begin. ECF No. 40 at 4. Allowing Plaintiff to use that report at the arbitration would have worked unfair prejudice on Defendant, which would not have had sufficient time to digest and respond to it. Moreover, late production of the report violated two local rules, *see* ECF No. 40 at 3-4, as well as the discovery schedule set out in the Notice of Arbitration Hearing filed on the docket, ECF Nos 19, 25. Plaintiff provided no reason for the delay other than the unsupported assertion that he had "substantial difficulty in obtaining an estimate of damages." ECF No. 36 ¶ 6. Permitting the Plaintiff to use the untimely expert report now, or at trial, "would in effect permit a [party] to use the court's arbitration proceeding as a dress rehearsal, or screening event, to discern where the weaknesses are in the [opposing party's] case, and then, after the arbitration, allow the [party] to gather new evidence to supplement [its own] case." *Toy v. Pickens*, No. 12-cv-5379, 2013 WL 3742446, at *1 (E.D. Pa. July 16, 2023). Such a stance "would undermine the purposes of the court-annexed arbitration procedure to dispose of cases efficiently and conserve judicial resources." *Id.* (citation omitted).

independent engineer "could not determine intent," ECF No. 42-3 at 17, does not manufacture a genuine dispute of material fact. Thus, Hughes has failed to support his assertion that the damage to the sink should have been covered.

Next, the insurance contract makes clear that Liberty Mutual only covers lost rental income when a covered loss is the reason for the insured's inability to rent out the property. ECF No. 32-9 at 11; *see also* ECF No. 43 at 4. Because this court finds that the property damage is not covered, it must find the same for the lost rental income. And similarly, because the property damage is not covered, Hughes's associated expenditures, such as the purchase of cleaning supplies, are also not covered by the insurance contract.

Finally, the Court will consider the remainder of the property damage described by Hughes in his deposition. For instance, Hughes alleges water damage to various surfaces, stains on a carpet, and various scrapes, among other minor injuries to the property. *See generally* ECF No. 32-17. But his failure to put forth any non-speculative evidence of vandalism is as fatal to these claims as it is to the damage to the plumbing. Moreover, Liberty Mutual asserts that it is entitled to summary judgment with respect to the remainder of the property damage because Hughes has not specified the extent of that damage or calculated the cost to effectuate repairs. Indeed, Hughes has not produced any repair estimates or bills for that damage, nor has he otherwise quantified its extent. ECF No. 32 ¶ 41, 50. Therefore, Hughes has not produced "sufficient facts" for the court to "arrive at an intelligent estimate [of damages] without speculation or conjecture," *Rochez Bros. v. Rhoades*, 527 F.2d 891, 895 (3d Cir. 1975), and he cannot recover for those aspects of the property damage.

For the reasons stated above, the Court will grant Defendant's Motion for Summary Judgment on Count I.

b. Bad Faith

As to Hughes' bad faith claim, Hughes has no evidence that Liberty Mutual acted in bad faith, and the Court will accordingly grant summary judgment on that claim.

In order to prevail on a bad faith claim under Pennsylvania state law, a policyholder must show that "the insurer (1) did not have a reasonable basis for denying benefits under the policy; and (2) knew or recklessly disregarded its lack of reasonable basis in denying the claim." *W.V. Realty, Inc. v. N. Ins. Co.*, 334 F.3d 306, 312 (3d Cir. 2003) (citation omitted). The statute implicates a range of insurer conduct, including unreasonable delays in payment, *see Ania v. Allstate Ins. Co.*, 161 F. Supp. 2d 424, 430 (E.D. Pa. 2001), reliance on a "frivolous" interpretation of an insurance contract, *see Hudgins v. Travelers Home & Marine Ins. Co.*, No. CIV.A. 11-882, 2013 WL 3949208, at *9 (E.D. Pa. July 31, 2013), failure to thoroughly investigate a claim, *see Brunner v. Allstate Vehicle & Prop. Ins. Co.*, No. CV 24-1293, 2024 WL 2847189, at *4-5 (E.D. Pa. June 4, 2024), and misleading or conflicting statements by insurance adjusters, *see Moravia Motorcycle, Inc. v. Allstate Ins. Co.,* 602 F. Supp. 3d 762, 767 (W.D. Pa. 2022). However, "[t]he fact that plaintiff's burden [in a bad faith claim] at trial is higher than preponderance of the evidence means that plaintiff's burden in opposing summary judgment is higher as well." *Quaciari v. Allstate Ins. Co.*, 998 F. Supp. 578, 581 (E.D. Pa. 1998), *aff'd*, 172 F.3d 860 (3d Cir. 1998); *see also Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 178 (3d Cir. 2011), as amended (Dec. 9, 2011) (noting that evidence "so clear, direct, weighty and convincing as to enable a clear conviction, without hesitation, about whether or not the defendants acted in bad faith" is required). In other words, an insurer can prevail against a bad faith claim at the summary judgment phase simply "by affirmatively demonstrating a reasonable basis for its actions." *Quaciari*, 998 F. Supp. at 581 n.3.

In the instant case, Liberty Mutual hired three independent experts to assess the property damage. ECF No. 32 ¶ 22. One such expert (Burtis) prepared a Forensic Engineering Report, which included both photographic documentation of the damage and analysis of its likely cause. *See* ECF No. 32-15. That report concluded that a variety of factors, including "repeated moisture exposure" and "rough usage," contributed to the property damage. *Id.* at 5; *see also* ECF No. 42-3 at 17-18. On that basis, Liberty Mutual found that "ongoing seepage, wear, tear, and deterioration, hard living, and faulty workmanship," rather than vandalism, caused the loss and accordingly declined to provide coverage for the losses. ECF No. 32-13 at 3.

The production of an expert report is itself nearly sufficient to rebut a bad faith claim. Indeed, several courts in this District have found that "[i]nsurance companies act reasonably, and do not exercise bad faith, when they deny claims based upon engineering experts' reports." *Gethsemane FBH Church of God v. Nationwide Ins. Co.*, No. CV 19-03677, 2020 WL 1694544, at *4 (E.D. Pa. Apr. 7, 2020) (citing cases). Such expert reports need not be entirely comprehensive in order for an insurance company to reasonably rely on them. *See, e.g.*, *Seidman v. Minn. Mut. Life Ins. Co.*, 40 F. Supp. 2d 590, 594 (E.D. Pa. 1997) (finding that even where the "adequacy of the [] examinations" could have been disputed, the insurer's reliance on them was reasonable).

Despite the weight of the caselaw against him, Hughes argues that the "mere existence" of an engineer's report is not enough to preclude bad faith. ECF No. 42 at 14. He attacks the quality of the Forensic Engineering Report, focusing on the property damage that the engineer *did not* mention: broken locks, a broken soap dish, spilled paint on the carpet, and most importantly, the supposed "black grease" clogging the sinks. *Id.* at 14-16. He claims that because the engineer "did not render an opinion as it relates to a significant amount of the claimed damage," Liberty

9

Mutual therefore "had no basis for denying coverage as it relates to those damages." ECF No. 42 at 17.

Hughes' claims about the inadequacy of the report are both overstated and insufficient to support his claim. While it is true that Burtis did not note every single piece of damage one by one, he did note that he found "no evidence of overflowing sinks," seemingly contrasting Hughes' allegations regarding plumbing damage. ECF No. 32-15 at 5. And, in any case, even if the report's conclusions with respect to wear and tear were found to be incorrect, reliance on an incorrect report still would not *per se* demonstrate the insurer's bad faith. *See, e.g.*, *Totty v. Chubb Corp.*, 455 F. Supp. 2d 376, 390 (W.D. Pa. 2006) ("[E]ven if the expert incorrectly assessed the cause of damage, this is not evidence that his conclusions were unreasonable or that Defendant acted unreasonably in relying upon them." (citations omitted)).

Moreover, Hughes's cited cases on this issue are inapposite. In *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 523-26 (W.D. Pa. 2012), for instance, the court sustained a bad faith claim based on the insurer's "inadequate investigation," but the insurer's errors were much more serious than those here – the adjusters there were trained to apply an incorrect legal standard and thus improperly denied the claims. And in *Hollock v. Erie Ins. Exch.*, 842 A.2d 409, 413 (Pa. Super. Ct. 2004), the insurer's investigative practices giving rise to a viable bad faith claim were characterized by the court as "disingenuous" and "abusive" where the insurer repeatedly misled the insured and ignored critical evidence. By contrast, the facts more closely resemble *Covenant Realty v. Westminster Am. Ins. Co.*, No. 2:20-CV-00301-KSM, 2021 WL 4963519, at *5 (E.D. Pa. Oct. 26, 2021), where reports written by an adjuster and a structural engineer regarding a roof collapse "gave [the insurer] reasonable bases" for denying the claim, or *Capriotti v. Allstate Prop. & Cas. Ins. Co.*, No. CIV.A. 11-7779, 2012 WL 3887043, at *4 (E.D. Pa. Sept. 6, 2012), where an

in-person inspection of the home yielded some evidence that the damage was "gradual," not "sudden," and thus gave the insurer a reasonable basis to deny coverage. Simply put, Hughes's own cases demonstrate that his quibbles with the engineer's investigation would need to be much more serious to give rise to a viable bad faith claim. No reasonable juror could find from the evidence provided that Liberty Mutual did not reasonably rely on the Burtis report.

For the reasons stated above, this court will grant Defendant's Motion for Summary Judgment on Count II.

### IV. CONCLUSION

For the foregoing reasons, the Court will **GRANT** Defendant's Motion for Summary Judgment on Counts I and II. An appropriate Order will follow.

**BY THE COURT:**

/s/ Chad F. Kenney
_____
**CHAD F. KENNEY, JUDGE**